Argued and submitted April 5, 2019, reversed and remanded July 1, 2020

Chong Ok CHANG,
an individual, and
Chong Ok Chang, as guardian *ad litem* for
Meehyun Jennifer Chun and Eugene Dave Chun,
*Plaintiffs-Appellants,*

*v.*

Eun Hee CHUN,
an individual, and
Sun Young Chun, an individual,
*Defendants-Respondents,*

*and*

Ik Jung CHUN,
an individual, and
Hyung Sun Chun, an individual,
*Defendants.*

Lane County Circuit Court
16CV20052; A165902

470 P3d 410

In this tort action, plaintiffs appeal a general judgment and money award. In the first assignment of error, one plaintiff argues that the trial court erred in its dismissal of her claim for intentional infliction of emotional distress (IIED), because there was insufficient evidence to support a finding that she willfully violated the trial court's order. In the second assignment of error, another plaintiff contends that the trial court erred in concluding that Washington law required her to allege economic damages resulting from the property damage to state a claim for trespass. In response, defendants argue that allegations of noneconomic damages are insufficient. In the alternative, defendants contend that no reasonable factfinder could find that the plaintiff had a right to the exclusive possession of the property or that the lease was not a sham. In a third assignment of error, plaintiffs contend that the trial court erred in denying their motion for a new trial, arguing, in relevant part, that "the jury instruction became the law of the case." Finally, plaintiffs assign error to the award of costs and disbursements to defendants. *Held*: (1) The trial court erred in dismissing the IIED claim, because there was insufficient evidence to find that plaintiff acted willfully. (2) The trial court erred in dismissing the trespass claims. Under Washington law, trespass is a strict liability tort and, therefore, a plaintiff can claim noneconomic damages that are proximately caused by the trespass. Furthermore, a reasonable factfinder could find that defendant did not repudiate the lease agreement and that the lease agreement was not a sham. (3) Denial of the motion for a new trial was proper because the jury instruction did not become the law of the case. (4) Because the trial court erred in dismissing the IIED and trespass claims, reversal of the awards of costs and disbursements is required.

Reversed and remanded.

Karrie K. McIntyre, Judge.

George W. Kelly argued the cause and filed the briefs for appellants.

Paul R. Allen argued the cause for respondents. Also on the joint brief were Hutchinson Cox and John F. Kieran.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

Ik Jung Chun started a second family without telling or leaving his first one. He housed his second family in a rental home that he owned with his then-wife from his first family, defendant Eun Hee Chun. For a time, he maintained both families without his first family finding out about the second one. Ik's deceit caught up with him. This led to two confrontations at the rental house between the members of his first family and the members of his second family. Those confrontations led the members of Ik's second family, plaintiffs Chong Ok Chang (hereinafter referred to as Sophia), J, and E, to sue Eun and her daughter, defendant Sun Young Chun, for trespass, assault, false imprisonment, and intentional infliction of emotional distress.

Before trial, the trial court dismissed E's claim for emotional distress under ORCP 46 B as a discovery sanction after his psychologist's office refused to provide his treatment records. Then, at trial, the court dismissed the trespass claims for failure to state a claim. The jury returned a verdict in Sophia's favor on her assault claim against Sun, awarding her $31 in damages, but otherwise rejected plaintiffs' claims. Plaintiffs moved for a new trial on the ground that the jury poll reflected that the jury had not complied with the instructions explaining that the "same nine" jurors had to agree on the answers to the questions presented on the verdict form; the trial court denied that motion and subsequently awarded defendants their costs. Plaintiffs appealed.

On appeal, plaintiffs assign error to (1) the dismissal of E's claim for intentional infliction of emotional distress; (2) the dismissal of the trespass claims; (3) the denial of the new-trial motion; and (4) the award of costs to defendants. We conclude that the trial court erred by dismissing E's emotional-distress claim and the trespass claims but did not err in denying the motion for a new trial. Because our disposition requires the reversal of the judgment, including the award of costs, we need not reach the question of whether the court properly awarded costs.

## I.  STANDARDS OF REVIEW

The different assignments of error implicate three different standards of review.

We review for abuse of discretion a trial court's decision to strike a claim under ORCP 46 B. *Pamplin v. Victoria*, 123 Or App 388, 391, 859 P2d 1185 (1993), *rev'd on other grounds*, 319 Or 429, 877 P2d 1196 (1994) (citing *Hahm v. Hills*, 70 Or App 275, 279-80, 689 P2d 995 (1984)).

We review the grant of a motion to dismiss for failure to state a claim under ORCP 21 A(8) for legal error. *Rivas v. Board of Parole*, 277 Or App 76, 78, 369 P3d 1239 (2016), *rev den*, 360 Or 752 (2017). In so doing, we accept as true the allegations in the complaint, and any reasonable inferences that can be drawn from those allegations, viewing them in the light most favorable to the nonmoving party. *Id*.

"Our standard of review of a trial court's denial of a motion for a new trial depends on the nature of the alleged error." *Greenwood Products v. Greenwood Forest Products*, 357 Or 665, 678-79, 359 P3d 219 (2015). Here, the court's denial turned on an interpretation of law. That makes our review for legal error. *Id*. at 679.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' challenge to the dismissal of their trespass claims is the only one that implicates the underlying facts of the parties' dispute. Therefore, in setting forth those facts, we focus on those relevant to the trespass claims. Because the trial court resolved those claims on defendants' motion to dismiss for failure to state a claim, we draw the facts, in the main, from the complaint, though, for context, we draw some additional undisputed facts from the evidence presented at trial. The facts pertaining to plaintiffs' other assignments of error are procedural and not disputed.

In 2001, Ik and Eun, with their children Sun and Hyung, moved from South Korea to Eugene, Oregon. Thereafter, they acquired multiple real properties in Oregon and Washington. One of those properties was a house in Vancouver, Washington, that Ik and Eun purchased to use as a rental.

During the same time period, Ik and Sophia had two children together, J and E. In 2013, Ik moved Sophia, J, and E to the United States, eventually housing them in the Vancouver rental house. J and E thought their parents were married.

In May 2014, Sophia and Ik entered into a written lease agreement for the Vancouver residence. The terms of the lease set rent at $100 per month; the rent was low because Ik was not otherwise paying child support. Eun was not a party to the lease agreement. When she learned that Ik had moved Sophia, J, and E into the home, she confronted Ik and told him that Sophia and her children were not allowed to live there.

In October 2014, Eun and Hyung drove to the Vancouver residence and confronted Sophia as she attempted to leave the home to pick up J from school. Eun blocked Sophia's car in the driveway with her vehicle. Eventually, Sophia left on foot to pick up her daughter. E, then 11 years old, had been watching the confrontation from a window inside the house. Eun and Hyung saw E in the window and yelled for him to open the door. E attempted to leave through the back door, but the women ordered him back in the house, questioned him, videotaped him, and took his house key.

Sophia, J, and E did not move out of the house. Half a year later or so, Eun returned to the Vancouver home, this time accompanied by Sun. Sophia and both children were home. Eun and Sun rang the doorbell, yelled, and kicked the door. They then unlocked the door using the key that Eun had taken from E, broke the chain lock that secured the door, and entered the house. Once inside, Eun dragged Sophia into a bedroom, pushed her onto a bed, struck her repeatedly, and prevented her from calling the police.

Following the two confrontations, Sophia, J, and E brought this action. Sophia alleged two claims for trespass to land, based on the two separate confrontations. Sophia and E also alleged individual claims for assault, and all three plaintiffs raised various claims for intentional infliction of emotional distress and false imprisonment.

Before trial, the court dismissed E's claim for intentional infliction of emotional distress. It did so under ORCP 46 B as a discovery sanction after E's counselors, Family Solutions, refused to turn over his psychological records.

Following the close of plaintiffs' case, defendants moved to dismiss Sophia's trespass claims for failure to state a claim. Alternatively, defendants moved for a directed verdict on those claims. Defendants argued that the trespass claims did not state a claim because they did not sufficiently allege "actual and substantial damages" as required under Washington law, because the complaint alleged only noneconomic damages, which in their view could not, as a matter of law, constitute the type of damages needed to support a trespass claim. Defendants also argued that an additional basis for dismissal was that the complaint alleged that Sophia had a written lease agreement with IK Golf LLC, and there had been no evidence that IK Golf LLC owned the properties or was on the lease. Plaintiffs responded by requesting to amend and strike IK Golf LLC and replace it with Ik Chun to conform with the evidence. On the directed verdict motion, defendants argued that there was insufficient evidence that Sophia had the right to exclude others, contending that there was insufficient evidence that Sophia had a valid lease. The trial court granted the motion to dismiss the trespass claims and did not address the motion for a directed verdict. It ruled further that plaintiffs' motion to conform was moot as a result of its decision to grant the motion to dismiss.

The jury found in Sophia's favor on her assault claim against Eun and awarded her noneconomic damages in the amount of $31. Plaintiffs subsequently moved for a new trial on the ground that the jury poll affirmatively demonstrated that the jury had not complied with the court's jury instruction that the "same nine" jurors were required to agree on the answers to each of the court's questions on the verdict form. The court denied the motion and, ultimately, awarded costs and disbursements to defendants. Plaintiffs appealed.

On appeal, plaintiffs challenge the dismissal of E's claim, the dismissal of the trespass claims, the denial of their new-trial motion, and the award of costs and disbursements.

Defendants respond that the challenged rulings are correct in all respects.

### III.   ANALYSIS

We address the plaintiffs' assignments of error in turn, beginning with the challenge to the dismissal of E's intentional infliction of emotional-distress claim.

A.   *Dismissal of E's Intentional Infliction of Emotional-Distress Claim*

The trial court dismissed E's claim for intentional infliction of emotional distress after Family Solutions, which provided counseling services to E, refused to turn over E's psychological records. Family Solutions refused to do so even though both E and his mother signed written authorizations allowing for the disclosure of the records. Family Solutions explained its decision in a letter to plaintiffs' attorney:

> "We are in receipt of your request for records for our client, [E]. Family Solutions has a responsibility to safeguard the privacy of our client as outlined in [Revised Code of Washington (RCW)] 70.02 and RCW 71.34. At this time, we are unable to provide you with these records as our client has not freely authorized their disclosure."

Based only on that letter, the court found that E was "willfully disobeying" a court order regarding the production of the documents, and that dismissal was the appropriate remedy for the contempt. Explaining its reasoning, the court stated:

> "The parties were first before the Court, actually, in Case No. 15DR10690, a domestic relations matter that was pending between Ik Jung Chun and Eun Hee Chun and Ms. Chang was a joined party to that proceeding.
>
> "In Case No. 15DR10690, Ms. Chang was joined on March 24th, 2016 and the parties proceeded throughout the summer as the cases were relatively tracking together. The motion to consolidate was denied by the Court so that the domestic relations case would move forward prior to this tort case.
>
> "On June 24, 2016, this case was filed and the 15DR10690 case was still tracking. The—this case as well as that case

had multiple, overlapping parties and intertwined legal issues.

"In Case No. 15DR10690 on September 9 of 2016, the Court granted an order compelling Ms. Chang to produce the psychological and counseling records for [E].

"So that was the first order of the Court to provide those psychological records. Further, on October 7, 2016, there was an order that required Ms. Chang to deliver the documents not later than 12:00 p.m. on October 14, 2016.

"I draw this to the parties' attention and for the Court record that Ms. Eun Hee Chun has been trying to obtain the documents for a significant and lengthy period of time.

"A protective order was requested in this case separately on January 31st, 2017 and a request for out-of-state commission in order to get Mr. Hunter, who was the psychological counselor at Family Solutions.

"Both were signed by this Court on February 21st, 2017. This matter was previously set for trial on April 25th, 2017. And the Court postponed the case on February 27th and set new discovery and deadlines and included motion to compel deadlines.

"The motion to compel was heard on May 8th. And, again, the motion to compel was granted and directed Ms. Chang to provide the documents. The documents from Family Solutions have not been delivered in their entirety to the defendants in this matter.

"And we have received information by way of exhibits filed on the motions that, despite the diligent efforts on behalf of counsel, that I find that the records are within the custody and control of the plaintiff.

"I find that, based on the exhibit submitted by Family Solutions as a letter specifically from that entity, that the plaintiff, [E], is willfully disobeying the order of the Court.

"And although prejudice need not be shown in order to grant sanctions, there is significant prejudice in this case as we are literally on the eve of the second trial setting and defendant does not have the information in order to prepare a sufficient defense and/or impeach or undermine plaintiffs' case.

"I find that there are no lesser sanctions that would be appropriate in this matter given this is the second trial setting and the significant length of time that the parties have been attempting to obtain the information. So motion to strike will be granted. However, we'll go through the amended second complaint and I will hear from the parties."

On appeal, E argues that there is insufficient evidence to support a finding that he willfully violated the trial court's order. In particular, he contends that the letter from Family Solutions on which the court relied is not sufficient to support a finding that E was willfully disobeying the court's order regarding disclosure of his counseling records. We agree.

To dismiss E's claim for intentional emotional distress under ORCP 46 as a sanction for a violation of a court order,[1] the court was required to find that his failure to comply with the court order was "willful, in bad faith, or reflect[ed] a similar degree of fault." *Lang v. Rogue Valley Medical Center*, 361 Or 487, 501, 395 P3d 563 (2017). Here, the trial court determined that E acted willfully, so the issue is whether the evidence before the court is sufficient to support that determination.

A party's noncompliance with a court order is willful when it is voluntary, that is, a choice by the party not to comply. *State v. Graham*, 251 Or App 217, 220, 284 P3d 515 (2012). Thus, a party willfully disobeys a court order when, with knowledge of the order and its requirements, the party voluntarily engages in conduct that violates the order. Alternatively, a party willfully violates a court order when a party knows about the order, chooses to ignore it, and then engages in conduct that violates it. *Dept. of Rev. v. Carpet Warehouse*, 296 Or 400, 407, 676 P2d 299 (1984) ("A party cannot ignore a court order and then claim that the act of ignoring it was not willful."); *Pamplin v. Victoria*, 138 Or App 563, 566-67, 909 P2d 1245 (1996) (trial court's finding that party "ignored" discovery requests and court order was equivalent of a finding of willfulness because it reflected a

---

[1] ORCP 46 B(2) authorizes a court to impose sanctions against a party who "fails to obey an order to provide or permit discovery."

determination that the party "chose to take no notice" of the discovery request and the court's order).

The trial court based its determination that E acted willfully on Family Solution's representation in its letter that "our client has not freely authorized [the] disclosure" of his records. But what does that representation tell us about E's conduct? Nothing. The letter says nothing about what—if anything—E did to cause Family Solutions to reach that conclusion. Without facts about what, if anything, E did, it is equally possible that Family Solutions based its determination that E had not "freely" authorized the disclosure of his records on its own subjective assessment that E was not acting voluntarily when he signed the release authorizing the disclosure of his records. On that point, the letter's reference to Family Solutions' perceived obligations under Washington law to protect E's privacy tends to suggest that Family Solutions was basing its decision on its perceived legal obligation, rather than on E's conduct, particularly given that it is undisputed that E signed the release authorizing the disclosure of his counseling records. In all events, this record discloses too little about what, if anything, E did to allow for the conclusion that the failure to produce the documents as required was the product of E's own willful conduct.

Arguing for a different conclusion, defendants rely on *Stronach v. Ellingsen*, 108 Or App 37, 814 P2d 175, *rev den*, 312 Or 151 (1991). They characterize *Stronach* as a "nearly identical" case, noting that there we upheld the trial court's ORCP 46 B dismissal of the plaintiff's personal injury claim for failure to produce medical records that were in the plaintiff's doctor's possession, even after the court had granted a motion to compel those records. But *Stronach* did not involve the same question presented here: whether the record was sufficient to support a finding that the plaintiff willfully disobeyed one of the court's discovery orders. It therefore provides no guidance on whether the record in this case is sufficient to support the trial court's factual finding that E acted willfully.

Because the trial court's finding that E acted willfully is not supported by the evidence, the court abused its

discretion by dismissing E's claim for intentional infliction of emotional distress, and the judgment must be reversed insofar as it dismissed that claim. Plaintiffs also contend that the error in dismissing E's claim requires reversal of the judgment in defendants' favor on the emotional-distress claims brought by J and Sophia. Plaintiffs point out that the trial court restricted them from introducing any evidence about what E's distress was and how his distress affected their own distress, something they contend could have led the jury to reach a different result on their claims. But plaintiffs do not assign error to any evidentiary ruling in that regard, and they did not put forth an offer of proof of what evidence they would have offered absent the court's restriction. As a result, we are unable to determine whether or not any error in limiting the evidence of E's emotional distress was harmless, which means that J and Sophia are not entitled to reversal of the judgment on their claims. *State v. Krieger*, 291 Or App 450, 457, 422 P3d 300, *rev den*, 363 Or 599 (2018) (explaining that offer of proof is required to permit Court of Appeals to determine whether exclusion of evidence is harmless or not).

B.  *Trespass Claims*

The next issue is whether the trial court erred in dismissing the trespass claims. The parties agree that Washington law governs those claims. As noted, defendants moved to dismiss those claims for failure to state a claim on the ground that those claims did not state a claim for trespass under Washington law because Sophia alleged only noneconomic damages and did not seek to recover economic damages for damages to the property. Defendants alternatively moved for a directed verdict on the ground that the evidence was insufficient to support a finding that defendants' conduct in breaking into the house constituted "'an invasion of property affecting an interest in exclusive possession,'" as Sophia was required to establish to prevail on her trespass claim under Washington law. *Grundy v. Brack Family Tr.*, 151 Wash App 557, 567, 213 P3d 619 (2009) (quoting *Wallace v. Lewis County*, 134 Wash App 1, 15, 137 P3d 101 (2006)). The trial court granted the motion to dismiss and did not reach the motion for a directed verdict.

On appeal, Sophia contends that the trial court erred in concluding that the Washington law of trespass required her to allege economic damages resulting from the damage to the property in order to state a claim for trespass. Alternatively, Sophia argues that she sufficiently alleged damage to the property by alleging in the complaint that defendants broke the chain lock on her door. In response, defendants argue, as they did below, that a trespass claim under Washington law requires proof of "actual and substantial damages" to property, and that allegations of non-economic damages are insufficient to establish the damages necessary to establish a trespass claim. In support of this argument, they rely, as they did below, on a 2011 unpublished opinion from Division 1 of the Washington Court of Appeals, *Shoblom v. Pickler*, 161 Wash App 1040, 2011 WL 1843526 at *2, *rev den*, 172 Wash 2d 1025 (2011), in which the court concluded that, to recover emotional-distress damages on a trespass claim, a plaintiff had to prove damages to property first. Defendants argue in the alternative that they were entitled to a directed verdict on the trespass claims because the evidence was insufficient to support a finding that Sophia had an interest in the exclusive possession of the Vancouver property.

We start with the question of whether Sophia failed to sufficiently allege a trespass claim because the damages that she alleged ensued from defendants' intentional and uninvited entrance onto her property were for emotional distress and not for property damage. Here, no party disputes that Washington law governs Sophia's trespass claims. When confronted with a question about the substantive law of another state, we first look to whether the state's appellate courts have answered the question at hand. *King v. King*, 295 Or App 176, 189, 434 P3d 502 (2018), *rev den*, 364 Or 849 (2019). If they have not, our goal is "to ascertain how the court of that state would apply its law" through an examination of the principles of decision-making identified in the state's case law. *Id.* at 189 (using statutory interpretation to ascertain how a state, other than Oregon, would apply its law); *CACV of Colorado v. Stevens*, 248 Or App 624, 629-30, 274 P3d 859 (2012) (using rules of substantive law to resolve a procedural issue, which the other state's case law

did not directly resolve). In other words, when applying the substantive law of Washington, we must put ourselves in the shoes of Washington judges.

Here, our review of Washington appellate decisions has uncovered no published, precedential opinion on the issue before us. Different divisions of the Washington Court of Appeals have addressed the question at hand, however, in unpublished decisions, taking what appears to be divergent approaches.[2] In *Shoblom*, the 2011 unpublished decision by Division One on which defendants rely, the court concluded that allegations of noneconomic damages, standing alone, were insufficient to allege a claim for trespass; in Division One's view, to state a claim for trespass, a party was required to allege actual and substantial damages to property. Allegations of emotional distress, without "actual and substantial damages," do not suffice. *Shoblom*, 161 Wash App 1040, 2011 WL 1843526 at *2-3.

By contrast, in *Berschauer v. State Dept. of Gen. Admin.*, 1 Wash App 2d 1044, 2017 WL 6343652 (2017), a case involving a trespass by survey technicians who placed a stake on the plaintiff's property, Division Three of the Washington Court of Appeals concluded that trespass is a strict-liability tort for which a person is liable if the person intentionally enters another's land. 1 Wash App 2d 1044, 2017 WL 6343652 at *6-8 (quoting *Restatement (Second) of Torts*, § 158 (1965)). If that trespass—that intentional entry onto another's property—causes the person in possession of the property to suffer emotional distress, then that person

---

[2] Our review of Washington appellate case law on the elements of trespass revealed some conflicting perspectives on those elements. Many of the conflicts appear to stem from how to read the Washington Supreme Court's decision in *Bradley v. Am. Smelting & Refining Co.*, 104 Wash 2d 677, 709 P2d 782 (1985). As we understand *Bradley*—an understanding we think is consistent with the understanding expressed by Division Three of the Washington Court of Appeals in *Berschauer v. State Dept. of Gen. Admin.*, 1 Wash App 2d 1044, 2017 WL 6343652 at *7-8 (2017)—it stands for the proposition that, to prove a claim for trespass based on airborne pollutants, a plaintiff must establish "actual and substantial damages" to property. *Bradley*, 104 Wash 2d at 692, 709 P2d at 791. We do not read *Bradley* to have imposed such a requirement for a claim for trespass based on another's entry onto land possessed by another. On that point, *Bradley* itself appears to identify the *Restatement*'s strict-liability formulation of the tort as the correct one. *Id.* at 683-86, 709 P2d at 785-87 (quoting *Restatement (Second) of Torts*, § 158 (1965)).

may recover emotional-distress damages. *Id*. at *7 (noting that the "[s]ample (not pattern) jury instructions set forth in the *Washington Practice Series* assume that damages for emotional distress proximately caused by an intentional trespass are recoverable").

We are persuaded that the decision by Division Three of the Washington Court of Appeals in *Berschauer* reflects the correct state of Washington law as to whether allegations like those made by Sophia—that defendants intentionally entered her property without permission, thereby causing her to suffer emotional distress—state a claim for trespass. Although that opinion is unpublished, Washington General Rule 14.1(a) provides that "unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as nonbinding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate." Under that rule, it is appropriate for us to look to *Berschauer* for its persuasive value because it was decided after March 1, 2013. By contrast, the rule does not authorize consideration of *Shoblom* for any purpose. But, setting aside the operation of General Rule 14.1, the analysis in *Berschauer* is more thorough than that in *Shoblom*, and, for that reason, we are persuaded that *Berschauer* correctly reflects the substance of Washington law. Because, under *Berschauer*, Sophia's allegations sufficiently allege a claim for trespass, the trial court erred in granting defendants' motion to dismiss for failure to state a claim.

Alternatively, defendants argue that we should affirm the trial court's dismissal of the trespass claims on the ground that they were entitled to a directed verdict on those claims. Defendants contend that no reasonable factfinder could find that Sophia had a right to the exclusive possession of the Vancouver property because (1) Washington is a community property state, which, in defendants' view, made any transfer of possession of the property from Ik to Sophia essentially a nullity; and (2) in defendants' view, no reasonable factfinder could find that the lease between Ik and Sophia was anything but a sham, given how low the monthly rent was.

   Although the trial court granted defendants' motion
to dismiss and did not reach their motion for a directed ver-
dict, we consider defendants' contentions. That is because, if
defendants are correct that they were entitled to a directed
verdict because the evidence was insufficient to permit the
jury to find in Sophia's favor, then the trial court would have
been obligated to direct a verdict for defendants on those
claims anyway.

   To determine whether defendants were entitled to
a directed verdict on the trespass claims, we view "the evi-
dence, and all reasonable inferences therefrom, in the light
most favorable to the nonmoving party (in this case, plain-
tiff), and review to determine whether any reasonable fact-
finder could find in favor of the nonmoving party." *Yoshida's
Inc. v. Dunn Carney Allen Higgins & Tongue*, 272 Or App
436, 443, 356 P3d 121 (2015), *rev den*, 358 Or 794 (2016). A
directed verdict is appropriate only if the moving party is
entitled to judgment as a matter of law. *Trees v. Ordonez*,
354 Or 197, 205-06, 311 P3d 848 (2013).

   Noting that Washington is a community property
state, defendants first contend that all reasonable fact-
finders would have to find that the lease between Ik and
Sophia was not a valid lease because Eun was not party
to it, as generally required by RCW 26.16.030(6) (gener-
ally requiring participation and consent of both spouses to
convey an interest in property). Although defendants are
correct to read RCW 26.16.030(6) to generally require the
participation of both spouses in the transfer of property,
that does not mean a transfer of an interest in property
by one spouse, in violation of the statute, is void as a mat-
ter of law. Instead, when one spouse acts alone to trans-
fer community property, the transaction is voidable at the
election of the nonparticipating spouse. *Sander v. Wells*, 71
Wash 2d 25, 28-29, 426 P2d 481, 484 (1976). Furthermore,
a nonparticipating spouse may be estopped to void a con-
tract when a nonparticipating spouse, among other things,
has sufficient information to be reasonably informed of the
improper transaction and fails to act. *Id*. at 29, 426 P2d
at 484.

Here, the evidence would allow a reasonable fact-finder to find that Eun did not repudiate the lease agreement. Although Eun testified that she protested to her husband that she did not want plaintiffs in the house, she admitted that she took no action to evict them or any other legal action to remove them from the premises, despite her awareness that they were living there. That more than half a year passed between Eun's first visit to the Vancouver house to confront Sophia and her second visit, during which time she took no steps to have them removed from the premises, would also tend to support a finding that Eun did not repudiate the lease. Accordingly, defendants would not have been entitled to a directed verdict on the theory that Ik's unilateral transfer of the property rendered the lease invalid because the jury could have permissibly found that Eun did not repudiate the lease.

Defendants' other theory as to why they were entitled to a directed verdict is that, in their view, all reasonable factfinders would have to find that the lease between Ik and Sophia was a sham because of the low monthly rent. We disagree. This record allows for competing determinations as to whether the lease was a sham and does not require a finding either way. A reasonable factfinder could find, based on the form of the lease and Sophia's testimony about why the rent was low (because Ik was not paying her any child support), that the lease was a valid, bargained-for exchange. A reasonable factfinder could also find otherwise. The evidence gave rise to a jury question over the validity of the lease and, relatedly, Sophia's right to exclusive possession. Accordingly, defendants would not have been entitled to a directed verdict on the trespass claims had the trial court reached that motion, and we cannot affirm the trial court's dismissal of the trespass claims on that basis.

For the foregoing reasons, the trial court erred in dismissing the trespass claim and the judgment must be reversed for that reason. Although plaintiffs argue that the erroneous dismissal of the trespass claims requires reversal of the judgment as to their other claims, we do not see any likelihood that the dismissal affected the jury's verdict on the other claims.

C.  *Motion for a New Trial*

Next, plaintiffs contend that the trial court erred in denying their motion for a new trial. Plaintiffs contend that (1) the trial court instructed the jury that the same nine jurors had to agree on the answer to each of the questions on the verdict form; (2) the jury poll shows that the jury did not fully comply with that instruction; and (3) the jury instruction became the law of the case, even if it might have been wrong, such that the jury's failure to adhere to it requires reversal. Defendants respond that the jury instructions did not become the law of the case and were susceptible to multiple interpretations, making the jury's verdict constitutionally sound. Defendants contend that the Supreme Court's decision in *Kennedy v. Wheeler*, 356 Or 518, 341 P3d 728 (2014), which rejected a virtually identical argument, defeats plaintiffs' argument. Defendants are correct about *Kennedy*, and we reject plaintiffs' third assignment of error for that reason.

D.  *Costs and Disbursements*

Finally, plaintiffs assign error to the award of costs and disbursements to defendants. Our conclusion that we must reverse the dismissal of E's claim for intentional infliction of emotional distress and of Sophia's trespass claims and remand for further proceedings on those claims means we must also reverse the award of costs and disbursements. ORS 20.220 (providing for reversal of judgment of costs upon reversal of judgment on which costs are based).

Reversed and remanded.